IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

CHABAD-LUBAVITCH JEWISH )
CENTER OF NEEDHAM, INC. )
                                                    )
    Plaintiff )
                                                    )
v. )          CIVIL ACTION NO:_____
                                                    )
THE TOWN OF NEEDHAM and )
DANIEL WALSH, Individually )
                                                    )
    Defendants )

COMPLAINT
(For Declaratory and Injunctive Relief, and Other Damages)

INTRODUCTION

This action concerns the conduct of the town of Needham and its Inspector of Buildings,

Daniel Walsh, in intentionally and with malice attempting to deny and denying the Plaintiff of its

constitutionally guaranteed protections of free exercise of religion, of assembly and of speech

under the First and Fourteenth Amendments of the United States Constitution.

Specifically, on or about January 20, 2005, the town of Needham, by its agents, made the

extraordinary, unprecedented, illegal and unconstitutional demand to a synagogue that "I order

the use of the property at 472 High Rock Street, Needham, MA as a worship center to cease until

proper permits and or relief has been granted by the appropriate boards."

In short, the Plaintiff is a traditional (sometimes referred to, inaccurately as "orthodox")

synagogue which has purchased a parsonage in the town of Needham and which has conformed

the use of its parsonage to all applicable laws. Notwithstanding, the town of Needham has

endeavored to use inapplicable housing codes and zoning bylaws in an attempt to drive the

Plaintiff from its property. Specifically, the Plaintiff has been threatened with sanction by the

town of Needham and Mr. Walsh if the Plaintiff continues to exercise its constitutionally

protected rights of free exercise of religion, speech and assembly, such that the Plaintiff requires

Court intervention to prevent further constitutional deprivation.

Consequently, the Plaintiff requests that this Court declare the conduct of the Defendants

to be unconstitutional as a matter of law, and to enjoin, both preliminarily, and permanently,

further violations of the Plaintiff's protected rights, and to award damages and attorney's fees

consistent with the Court's findings.

## JURISDICTIONAL AUTHORITY OF THE COURT

1.      This action is brought pursuant to 28 U.S.C.  §§ 1331 and 1343, and 28 U.S.C.  §§

2201,2202,  42 U.S.C. §§ 1971-73, 42 U.S.C. §§ 1983, 1985 and the First and Fourteenth

Amendments to the United States Constitution. This Court has jurisdiction specifically delegated

to it by act of the United States Congress, as well as its jurisdiction based upon violations of the

First and Fourteenth Amendment of the United States Constitution. This action seeks to redress

the deprivation under State and federal law of rights, privileges, and immunities secured by the

United States Constitution and the laws of the United States. This action also seeks to enjoin

unlawful conduct proscribed by 42 U.S.C.2000cc.

## THE PARTIES

2.      The Plaintiff, the Chabad Lubavitch Jewish Center of Needham, Inc. is a Massachusetts religious corporation established under M.G. L. c. 180, with a principal address at 472 High Rock Street in Needham, Norfolk County, in the Commonwealth of Massachusetts. The Plaintiff is affiliated with the Chabad-Lubavitch movement of Crown Heights, Brooklyn, in the State of New York.

3.      The Plaintiff's business consists of providing outreach and services to the Jewish community of Needham, as well as providing education about Jewish beliefs, traditions and cultural practices to the general population of the town of Needham in order to foster understanding of Jewish beliefs, traditions and cultural practices.

4.      Defendant, Town of Needham, ("the Municipal Defendant") is a municipality with a principal place of business at 1471 Highland, Avenue, Needham, in Norfolk County in the Commonwealth of Massachusetts. The Municipal Defendant is a political subdivision of the Commonwealth of Massachusetts

5.      Defendant, Daniel P. Walsh ("the Individual Defendant") is the Inspector of Buildings and an employee of the Municipal defendant, with a principal place of business at 470 Dedham Avenue in Needham, Norfolk County, in the Commonwealth of Massachusetts.

<u>RELIGIOUS BACKGROUND</u>
<u>REQUIREMENT OF SINCERE RELIGIOUS BELIEF</u>

6.    The Jewish people have been recognized as a distinct and unique ethnicity by the United

Nations based upon adherence to a unified set of religious principles based upon the Torah, a

common and ancient language (Hebrew), a definable and homogenous culture and a proven

continuity of history. Israel is the only nation in the world recognized by the United Nations as a

"homeland" for a "people."

7.    Judaism is a religion that defines the relationship between the Jewish people and their

divinity. The central document of the Jewish religion is the Torah, also known as the Five Books

of Moses. The Torah relates the history of the Jewish people, and provides specific rules,

regulation and guidance for daily life. The heart of these regulations is encompassed in the Ten

Commandments, although the Torah relates 613 negative and positive commandments that have

the full force and effect of law. The Jewish people also recognize the Oral Torah, the

explanations and details of the 613 commandments, which were transmitted contemporaneously

with the written Torah at Mount Sinai.

8.    These 613 commandments in turn have been debated and discussed by Jewish scholars

for thousands of years. These arguments, seeking to refine the Torah into practical, workable

rules for religious observance, form several dozen volumes known popularly as the Talmud.

9.    The Talmud, in turn, has been distilled into fewer volumes that delete the substantial

argument surrounding each law, and present the law in a manner accessible to individual

members of the Jewish community in practical form. One such volume is known as the Shulchon

Oruch, or Table of the Law. These volumes, in turn, are subject to other learned treatises that refine the law for modern, daily applicability.

10.     It is a fundamental tenet of Judaism that its commandments, both negative and positive, are intended to form the basis of every facet of daily life. It is well known, for example, that Jewish people keep "kosher," a term that refers to specific dietary observances. Jewish principles of business dealing and business ethics form the backbone of many modern, American professional responsibility codes, as well as much of both the Common and Civil Law.

11.     Jewish law specifies daily requirements of prayer and worship, which, in part, remind worshipers of the requirement of strict compliance with all aspects of Jewish law.

12.     Judaism, in its purest form, is practiced by each and every act performed by the Jew during the course of his ordinary day.

13.     Because Jewish law proscribes driving on the Sabbath, traditional Jewish worship services often occur in small synagogues or private homes within walking distance of the residences of the participants. Therefore, except in certain parts of the world with large Jewish populations, traditional Jewish worship services tend to be relatively small when compared to the usual conception of a "congregation."

14.     This requirement, that Jews must live within walking distance of their places of worship, has created an anomaly in modern America, where places of worship are generally zoned so as to be located many miles from residential neighborhoods, well outside of walking distance. Both federal and state laws have recognized the need for traditional synagogues to exist in areas generally considered "residential" by exempting very small worship centers from zoning requirements designed to keep worship centers out of residential neighborhoods.

15.    While worship services do occur in synagogues, Judaism requires a twenty-four hour commitment to observance.

16.    Thus, by definition, the Jewish home is often viewed as the primary place of religious practice. As was once stated by Hyman E. Goldin, it is in the Jewish home that "all that is noble in Judaism is bred and fostered." Indeed, since all activity of a Jewish family is infused with religious significance, each activity of the family becomes a religious act.

17.    When a Jew separates milk dishes from meat dishes in his home in the furtherance of the laws of kashrut, he is engaging in worship activity.

18.    When a Jew sits down to each meal is his home and washing his hands and saying a blessing before eating, he is engaging in worship activity.

19.    When a Jew is careful not to mix certain types of fiber in his home, or when a Jew recites the required blessing when arising in the morning, or before going to bed at night, he is engaging in worship activity.

20.    Across the world, on every Sabbath, millions of Jews invite other Jews into their homes for prayer, study, learning and celebration, all of which constitute worship activity.

21.    When a Jew is alone in his home, he is likely engaging in some form of worship activity.

22.    This lawsuit involves the attempt by the Town of Needham, and the Individual Defendant, to prevent the Plaintiff from engaging in worship activity and to prevent the Plaintiff from engaging in the free exercise of religion within a private sphere, the Plaintiff's parsonage at 472 High Rock in Needham, to regulate the Plaintiff's visitors, to interfere in the nature of conduct within a private home, and to regulate the very words the Plaintiff uses to describe itself- -all in violation of the First Amendment to the United States Constitution.

## BACKGROUND TO THE DISPUTE BEFORE THE COURT

23.    The Plaintiff corporation is affiliated with the Chabad Lubavitch movement of Crown
Heights in Brooklyn, New York. Chabad Lubavitch originated in Europe approximately two
hundred and fifty years ago.

24.    A "Chabad Center" is unlike many other religious institutions, particularly those in which
a group of worshipers create the institution and hire clergy. A Chabad center, on the contrary, is
created by the rabbi, who goes in search of a congregation.

25.    In the United States, Chabad Lubavitch is involved in outreach to Jews through more
than 1500 Chabad centers, a very large percentage of which are headquartered in private
parsonages in residential neighborhoods, free from municipal harassment.

26.    In Massachusetts, at least thirty "Chabad Centers" operate out of the homes of their
rabbis, in full compliance with state and federal law, which permit and recognize this use as a
lawful activity in a residential neighborhood without restriction.

27.    Each Chabad center is individually structured in the state in which it is located. Each
Chabad center is headed by a "shliach," which roughly translates as "emissary."   The shliach is
a rabbi ordained by Chabad Lubavitch in New York. Each local Chabad center is financed
locally by contributions to the Chabad center.

28.    Often, the shliach and his wife are very young when they arrive in a community, and they
very often bring little more than enthusiasm for Judaism and their ideals. Primarily, their
outreach objective is to invite Jewish people to enhance and increase their level of Jewish
observance.

29.     Some Chabad centers ultimately grow to full-fledged synagogues, with large buildings and appurtenant structures. However, almost all Chabad centers traditionally begin in the rented home of the Rabbi, often leading to the purchase of a parsonage and, for some, the eventual construction or purchase of a traditional synagogue structure.

30.     It would generally be the hope of the shliach that his Chabad center outgrow a parsonage, as the need for a more substantial building would be an indicator of success in his venture.

31.     The shliach in each community is generally not an individual from the town in which he settles. Often, the shliach knows only a few residents in the chosen community. Once the shliach arrives in town, he typically advertises his presence in the community by means of leaflets, newspaper advertisements and so forth.

32.     The objective of the shliach is to encourage Jewish people to participate in Jewish life, and to participate in the obligations of Jewish life. When the Chabad Center consists of the shliach and only a few other individuals, it is not uncommon for the Rabbi to invite small groups of guests into his home.

33.     The shliach is sometimes referred to as "Abraham's heir." The Torah teaches that Abraham adopted as his particular observance the special obligation of welcoming guests into his home. The Torah teaches that on one occasion, Abraham, while extremely ill and uncomfortable, arose from his bed to serve food to unexpected guests to his tent.

34.     Because the home is the center of primary Jewish activity, the shliach endeavors to bring Jewish people into his home, to learn the Jewish laws and obligations which dictate daily Jewish life. The shliach's home is intended to be a warm and welcoming place for people to come and learn, and to develop an understanding of Jewish tradition.

35.    The shliach of the Chabad Lubavitch Center of Needham, Inc. is Rabbi Menachem Mendel Krinsky. At the time of its incorporation, the Chabad Lubavitch Center of Needham, Inc. was incorporated at Rabbi Krinsky's apartment in Needham, at 56 Tillotson Road, Apartment 3.

36.    Subsequently, the Plaintiff acquired a single family home at 472 High Rock Street as a parsonage. The purpose of the parsonage, consistent with Massachusetts law, is to provide a home for the clergy and his family. Under Massachusetts law, a parsonage may be lawfully used as office space for clergy, social gatherings of the religious institution, prayer, study and so forth.

37.    The property at 472 High Rock Street is zoned as a single family home, and it is now used as a single family home--the residence of Rabbi Krinsky, his wife, and their four children.

38.    Consistent with Chabad Lubavitch practice, Rabbi Krinsky has notified the community of his new residence, and regularly invites Jewish people into his home for worship and study.

39.    His use is consistent with the legal definition of a parsonage and is consistent with all laws-housing code, zoning by-laws and otherwise.

40.    When the Plaintiff holds an event that would attract a large number of attendees, the Plaintiff secures the use of a large capacity hall. For example, for the celebration of the Jewish holiday of Lag B'Omer, the Plaintiff secured the use of the Powissett Lodge at Hale Reservation in Westwood. See, Exhibit A. Rabbi Krinsky has also utilized a hall at Wingate at Needham, an assisted living community, for several large events.

41.    The purpose behind utilizing outside space for large events is threefold. First, the parsonage is too small for large gatherings. Second, the rabbi, like any other resident, would be uncomfortable with large gatherings of strangers in his home. Finally, the Rabbi is fully cognizant that the parsonage lacks the parking and amenities necessary for large gatherings. In

short, the Plaintiff recognizes that a parsonage is not a public social hall, and doesn't treat it as one.

42.    Like other "start-up" Chabad centers, the Plaintiff holds its very small, weekly worship services at the parsonage, as the residential/commercial zoning of Needham would preclude the existence of a synagogue within walking distance of the current parsonage.

43.    At all times, the Plaintiff has conformed its conduct at its parsonage to the law as written and as it is intended to be enforced in the town of Needham.

44.    Building codes and zoning by-laws do not endeavor to regulate private conduct of private individuals in their homes, but rather seek to regulate changes of use that are permanent in nature, or inconsistent with the structure in which the use is occurring. Building codes and zoning by-laws are often drafted to avoid absurd intervention by the government into the private affairs of citizens.

45.    As a matter of law, extended families of 20-30 people who dine together every Sunday after church are not required to meet the health code regulations of restaurants.

46.    As a matter of law,  large groups of friends who gather every Sunday to watch football games and drink beer are not required to meet the liquor law ordinances of sports bars.

47.    As a matter of law, individuals gathering for weekly poker games are not required to register as casinos, or otherwise comply with hotel building codes and zoning by-laws.

48.    As a matter of law, a family holding an annual New Year's Eve party for 100 friends is not required to have its property rezoned and the structure modified for a very occasional use as a banquet hall.

49.     Similarly, a Rabbi, operating his parsonage within the laws, need not make his home compliant with the building code requirements of a full-service synagogue of 500 families. Indeed, the constitution protects the Rabbi from being so required.

50.     Both Massachusetts and federal law specifically protect religious groups from certain zoning infringement by municipalities specifically to avoid harassment of religious minorities, and to prevent municipalities from treating religious minorities differently from the poker club, or the large family dinner or the football parties and so forth.

51.     Nonetheless, shortly after the Plaintiff established the parsonage at 472 High Rock Street, neighbors began harassing Rabbi Krinsky and the Plaintiff in the form of false, defamatory and clearly bigoted letters to town officials. Clearly, the assaults on the Plaintiff and the Rabbi were based upon ulterior motives and were based upon perceptions of the Plaintiff's religion.

52.     The tone of the letters from neighbors, who have never objected to non-worship conduct of other neighbors, demonstrate a clear and obvious fear and hatred of traditional religious observance, and demonstrate an unfounded perception that the existence of observant religious people would somehow affect property values. The message of the correspondence to the town officials is clear—find a way to get the Plaintiff out of the neighborhood.

53.     Rather than protect the Rabbi from the improper conduct of the neighbors, the Municipal Defendant and the Individual Defendant ratified and adopted the harassing conduct, ultimately demanding that the Plaintiff comply with inapplicable building codes and zoning by-laws, with the full knowledge that complying with such building codes and zoning by-laws are not only expensive and prohibitive, but would place an impossible burden on the Plaintiff contrary to the law.

54.    The Municipal Defendant has, for example, demanded that the Plaintiff comply with regulations pertaining to changes of use of property, particularly for rooms accommodating 50 persons or more. None of these regulations pertain to the Plaintiff's parsonage. For example, 780 CMR 303.0, which relates to Assembly Use Groups, does not apply to "a room or space used for assembly purposes by less than 50 persons." No portion of parsonage property is used for "assembly purposes" for more than 49 persons.

55.    Indeed, as noted above, the Plaintiff utilizes outside space for large gatherings. The use of the parsonage for the occasional large gathering is no more subject to town permitting law than the New Year's party or poker club.

56.    The use of the Rabbi's children's playroom or the living room for a small prayer gathering does not convert the parsonage into a building for "assembly group use." Also, the mere gathering of guests in the Rabbi's home for study does not constitute a change of use from residential occupancy, which is still the primary use of the property. The use of the dining room table for Torah study does not change the change the use from residential occupancy, which is still the primary use of the property.

57.    The Plaintiff regularly uses its parsonage for small and orderly gatherings, which, at this time, includes little more than the Rabbi, his large family, and a small gathering of guests assembled for the purpose of prayer and study, an accepted use under the law. Although Jewish law specifically forbids counting Jews at a worship service, it is believed that attendance at these worship gatherings, including children, is about 24 individuals.

58.    Building codes and zoning by-laws are specifically drafted to prevent the kind of abuse of building codes and zoning by-laws in the manner in which they are now being misused.

59.    The Plaintiff has notified the Municipal Defendant, and the Individual Defendant, through counsel, that there has been no change of the residential use, that it is not using its facility for 50 or more persons and that the Plaintiff is in full compliance with all building codes and zoning by-laws. Plaintiff's counsel has patiently provided relevant codes, by-laws, ordinances, statutes, regulations and case law to the Individual Defendant to demonstrate the errors in the Individual Defendant's positions.

60.    The Defendants have chosen to ignore the codes, by- laws, statutes and regulations.

61.    In addition, the Municipal Defendant and the Individual Defendant have attempted to regulate the free speech of the Plaintiff, attempting to bar the Plaintiff from advertising its presence at 472 High Rock Street, and the lawful use of its parsonage.

62.    The Defendants have elected to continue their unlawful attempts at regulating the Plaintiff's speech.

63.    On or about January 20, 2005, the Individual Defendant sent correspondence to the Plaintiff with the extraordinary statement that "I order the use of the property at 472 High Rock Street, Needham, MA as a worship center to cease until proper permits and or relief has been granted by the appropriate boards." The result of this position is that religious worship can only occur with the permission of ten boards of the town of Needham comprised of elected and appointed political officials attempting to regulate conscience.

64.    At the time that this letter was written, Daniel Walsh knew, and continues to know, that no permits or other relief is required for the ongoing use of the parsonage in its present form.

65.    By so ordering, the Municipal Defendant and the Individual Defendant have ordered the Plaintiff to cease a lawful use of the property, has attempted prior restraint on the free speech rights of the Plaintiff and has otherwise attempted to bar lawful assembly.

66.    The Municipal Defendant and the Individual Defendant do not impose draconian measures on family gatherings and small parties throughout the town of Needham, apparently limiting its ban to Jewish conduct, notwithstanding the Plaintiff's compliance with the law.

67.    As was noted above, a Jewish home is a worship center. The Municipal Defendant and the Individual Defendant are thus attempting to regulate private religious activity, and are actively interfering in the lawful assembly of individuals in a private place for the purpose of prayer and study, with full knowledge of the illegality of their acts.

68.    This conduct is consistent with other unlawful deprivations of the Plaintiff's rights, immunities and privileges of citizenship, including the refusal by the town of Needham to allow the Plaintiff its constitutional right to use school properties for its purposes, in clear and obvious contravention to the holding of Lamb's Chapel v. Center Moriches, 508 U.S. 384 (1993).

### THE FREE EXERCISE CLAUSE PROTECTS THE RIGHTS OF THE INDIVIDUAL FROM INFRINGEMENT ON THE FREE EXERCISE OF RELIGION BY STATE ACTORS

69.    The First Amendment of the United States Constitution reads, in relevant part, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof..." The Fourteenth Amendment states, in relevant part, that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States...nor deny to any person within its jurisdiction the equal protection of the laws."

70.    The United States was settled in part by religious refugees such as the Pilgrims, who came to these shores seeking freedom to practice their religious faith as they saw fit, free from an

established state religion and free from requirements of society that mandated conduct in violation of religious principles.

71.     Since the inception of the United States, this nation has been the destination of numerous minorities seeking tolerance of belief, tolerance of differences and tolerance of culture. The Founding Fathers of the United States of America recognized the primary importance of limiting the power of the state to abridge the fundamental liberty of free exercise.

72.     As Justice O'Connor noted in her dissent in City of Boerne v. Flores, 521 U.S. 507 (1997), "the practice of the colonies and early States bears out the conclusion that, at the time the Bill of Rights was ratified, it was accepted that government should, when possible, accommodate religious practice."

73.     Justice O'Connor also noted that "George Washington expressly stated that he believed that government should do its utmost to accommodate religious scruples." As she further noted, "our Nation's Founders conceived of a Republic receptive to voluntary religious expression, not of a secular society in which religious expression is tolerated only when it does not conflict with a generally applicable law."

74.     Constitutional jurisprudence has specifically recognized the right of the private citizen to seek redress for violation of these fundamental liberties.

75.     In reviewing a case that places a burden on numerous constitutionally protected rights under the First Amendment and the Fourteenth Amendment, the Court must consider the balancing test of Sherbert v. Verner 374 U.S. 398 (1973), under which it must be asked whether the "prohibition substantially burdened a religious practice and, if it did, whether the burden was justified by a compelling government interest."

76.    <u>Sherbert v. Verner</u> also defines the standard of "compelling interest," noting that "no

showing merely of a rational relationship to some colorable state interest would suffice; in this

highly sensitive constitutional area, 'only the gravest abuses, endangering paramount interests,

give occasion for permissible limitation'." <u>Verner</u>, citing <u>Thomas v. Collins</u>, 323 U.S. 516,530.

## THE DEFENDANTS LACK A COMPELLING INTEREST
## FOR BURDENING RELIGIOUS PRACTICE

77.    Clearly, the town of Needham has a vested and lawful interest in protecting public safety

through building codes and zoning by-laws.

78.    In the case at bar, the Municipal Defendant and the Individual Defendant are not

enforcing the law as written, which permits the Plaintiff to engage in its conduct without

interference from the town of Needham.

79.    The parsonage remains a single family home for the sheltering of the Plaintiff's Rabbi

and his growing family. It always has been, and remains, a single family home. Consistent with

the rights of any other family living in a parsonage, the Rabbi has a lawful right to invite guests

into his home for lawful purposes, which clearly includes prayer and study without interference

from the town and neighbors.

80.    None of the conduct engaged in by the Plaintiff rises to the level of mandatory action by

a municipal government.

81.    Nevertheless, the Individual Defendant has ordered the Plaintiff to cease lawful religious

activity within a private home without any basis in law, let alone a compelling governmental

interest, by writing on January 20, 2005 "I order the use of the property at 472 High Rock Street,

Needham, MA as a worship center to cease until proper permits and or relief has been granted by

the appropriate boards." Subsequent to January 20, 2005, the Municipal Defendant adopted and ratified this unlawful conduct.

82.     Further, it is evident that the Municipal Defendant and the Individual Defendant are using inapplicable building codes and zoning by-laws for the ulterior purpose of denying the Plaintiff its rights under the Free Exercise clause of the United States Constitution, and with the specific intent of driving the Plaintiff from its property.

83.     Evidence at trial will demonstrate that the Plaintiff is in full compliance with the law, and has been in full compliance with the law, and that the Municipal Defendant and Individual Defendant, with full knowledge of the facts, have engaged in a knowing and willful attempt to deny the Plaintiff its protected rights under the First and Fourteenth Amendments of the United States Constitution.

### THE TOWN OF NEEDHAM HAS UNLAWFULLY INTERFERED IN THE PLAINTIFF'S RIGHT TO PEACEABLY ASSEMBLE AND RIGHT TO FREE ASSOCIATION, AS PROTECTED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

84.     The First Amendment of the United States Constitution, as made applicable under the Fourteenth Amendment, states that the government "shall make no law...abridging...the right of the people peaceably to assemble..." The Fourteenth Amendment states, in relevant part, that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States...nor deny to any person within its jurisdiction the equal protection of the laws."

85.     In its January 20, 2005 Order, the Municipal Defendant and the Individual Defendant have barred the Plaintiff's Rabbi and his guests from gathering for the purpose of prayer and

study in a private home, a lawful activity protected by the First Amendment of the United States Constitution, until the town boards give their regal imprimatur to participate in religious worship.

86.    The Order not only creates the bizarre situation of barring the Rabbi from having guests in his home at the risk of prosecution, but also of criminalizing the Rabbi's dinner hour, when he and his family pray before eating.

87.    The Order itself demonstrates its absurdity in its overbreadth, making one wonder if the Municipal Defendant and the Individual Defendant intend to poll individuals leaving the Rabbi's home to inquire if prayer took place.

88.    Massachusetts law clearly recognizes the legality of the parsonage as a home for clergy, and clearly anticipates that a parsonage, by definition, is a center of worship activity.

89.    It has been widely recognized that the "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment....Freedom of association is a limit on the power of State government." See, Attorney General v. Bailey, 386 Mass.367,379 (1982) citing, inter alia, NAACP v. Alabama, 357 U.S. 449 (1958)

90.    It has been further noted that " 'the right of association,' like the right of belief...is more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means....Such liberty is simply the right of the '...people to be let alone in the governance of those activities which may be deemed uniquely personal'." Williams v. Hathaway, 400 F.Supp. 122,126 (D.Mass. 1975)

91.    Finally, the Court has noted that "the First Amendment guarantees the right of free association, and conversely prohibits government sanctions against a person because he is a member of a particular association or believes in its purposes....The rationale of this limitation is

a recognition that to permit broad, sweeping or vague governmental inquiry in these areas could serve as an inhibiting influence on persons in their exercise of a fundamental right" Shapiro v. Roudebush, 413 F. Supp. 1177, 1179-80 (D.Mass. 1976)

92.    In the case at bar, the town of Needham has specifically attempted to do just this, directing with whom the Rabbi may meet, how he may invite his guests to his home, what he and they may do when they visit his private house, and how he may conduct himself in his private home, only following specific and invasive scrutiny by ten governing boards of town politicians.

93.    The January 20, 2005 order states that the Plaintiff and its guests will be subject to investigation and scrutiny by the government, and possible sanction by the government, simply on the basis of association and activity of a lawful and constitutionally protected activity-- worship.

94.    To bar assembly on the basis of religion is a conscious, knowing and appalling abuse of governmental power, and clearly unconstitutional as a matter of law.

### THE TOWN OF NEEDHAM HAS UNLAWFULLY INTERFERED IN THE PLAINTIFF'S RIGHT TO FREE SPEECH, AS PROTECTED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

95.    The First Amendment of the United States Constitution, as made applicable under the Fourteenth Amendment, states that the government "shall make no law…abridging…the freedom of speech…" The Fourteenth Amendment states, in relevant part, that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States…nor deny to any person within its jurisdiction the equal protection of the laws."

19

96.    Contrary to this protection, the town of Needham has demanded that the Plaintiff cease its practice of informing the community, though advertising and leaflets and so forth, of lawful activities transpiring within its parsonage.

97.    Specifically, the Municipal Defendant, and the Individual Defendant, are endeavoring to tell the Plaintiff what it may, or may not, say, in specific contravention of the First Amendment.

98.    The Municipal Defendant and the Individual Defendant has specifically endeavored to abridge the free speech rights of the Plaintiff.

COUNT I
VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION PERTAINING TO FREE EXERCISE OF
RELIGION

99.    The Plaintiff restates paragraphs 1-98 and incorporates them herein as if specifically stated.

100.    The Defendants, individually and collectively, have created a conflict between the Plaintiff's First Amendment protections under the Free Exercise Clause by ordering the Plaintiff, a religious institution, from using its parsonage as a "worship center," effectively banning the Plaintiff from practicing its religious beliefs within property owned by the Plaintiff, without any basis in law whatsoever, and by further depriving the Plaintiff of the privileges and immunities of citizenship under the Fourteenth Amendment of the United States Constitution in a manner that must be declared unconstitutional and in a manner that requires injunctive relief to preclude further harm to the Plaintiff

101.    The Defendants, individually and collectively, have created a conflict between the Plaintiff's First Amendment protections under the Free Exercise Clause by denying the Plaintiff

its lawful right, as any other citizen has the right, to the use of public property for the free

exercise of religion without any basis in law whatsoever, and by further depriving the Plaintiff of

the privileges and immunities of citizenship under the Fourteenth Amendment of the United

States Constitution in a manner that must be declared unconstitutional and in a manner that

requires injunctive relief to preclude further harm to the Plaintiff

<u>COUNT II</u>
VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION PERTAINING TO THE RIGHT TO
ASSEMBLE

102.    The Plaintiff restates paragraphs 1-101 and restates them herein as if specifically stated.

103.    The Defendants, individually and collectively, have attempted to bar the Plaintiff from

engaging in lawful assembly for the purposes of study and prayer, and have attempted to chill the

assembly rights of individuals by threatening prosecution in the event of peaceable assembly for

lawful purposes in a private residence, in flagrant violation of the Plaintiff's rights under the First

Amendment and by further depriving the Plaintiff of the privileges and immunities of citizenship

under the Fourteenth Amendment of the United States Constitution in a manner that must be

declared unconstitutional and in a manner that requires injunctive relief to preclude further harm

to the Plaintiff.

## COUNT III
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION PERTAINING TO THE RIGHT TO FREE SPEECH

104.    The Plaintiff restates paragraphs 1-103 and restates them herein as if specifically stated.

105.    The Defendants, individually and collectively, have attempted to bar the Plaintiff from engaging in free speech, by threatening persecution if the Plaintiff advertises and speaks of its lawful activities, in flagrant violation of the Plaintiff's rights under the First Amendment and by further depriving the Plaintiff of the privileges and immunities of citizenship under the Fourteenth Amendment of the United States Constitution in a manner that must be declared unconstitutional and in a manner that requires injunctive relief to preclude further harm to the Plaintiff.

## COUNT IV
## VIOLATION OF 42 U.S.C. §§ 1983, 1985

106.    The Plaintiff restates paragraphs 1-105 and restates them herein as if specifically stated.

107.    The Defendants, acting in their capacity herein, and acting under the color of the law, did deny the Plaintiff of the privileges and immunities of citizenship by denying the Plaintiff its fundamental civil rights to live and worship in a manner free of harassment and oppression.

108.    Said conduct in the form of conspiracy between the Defendants to deny civil rights were intentional and with malice, without good cause and for improper political motives.

109.    The tone of the Individual Defendant and the Municipal Defendant, by its agents, demonstrates an actual malice against the Plaintiff and members of this class.

110.    As a result of this conduct, the Plaintiff has been harmed.

WHEREFORE, the Plaintiff does request as follows:

1.  That this Honorable Court declare that the conduct of the Defendants described herein, of attempting to use inapplicable buildings codes and zoning by-laws for the purposes of harassment and oppression, of attempting to bar the Plaintiff from its lawful use of its parsonage without harassment and oppression, of attempting to preclude the Plaintiff and its guests from engaging in lawful assembly, of attempting to abridge the free speech rights of the Plaintiff, and of barring the Plaintiff from its right to use public property for the free exercise of its religion, be declared unlawful and unconstitutional, as denying the Plaintiff its rights under the First Amendment of the United States Constitution and otherwise deny the Plaintiff the privileges and immunities of citizenship under the Fourteenth Amendment of the United States Constitution, and declare that the practices specified herein constitute an absolute violation of the constitutional rights of the Plaintiff;

2.  That this Honorable Court declare that the January 20, 2005 Order, which was violative of the Plaintiff's protected rights to free exercise, free speech and free assembly is null and void;

3.  That this Honorable Court declare that the Defendants, acting under color of law, but in conspiracy and with intent to harm, did deny the Plaintiff\ of constitutionally protected rights in violation of 42 U.S.C. §§ 1983, 1985;

4.  That this Honorable Court enter a preliminary injunction against the January 20, 2005 Order pending the outcome of this dispute;

23

5. That the town of Needham be permanently enjoined from further unlawful activity, and from further violations of 42 U.S.C. 2000cc;

6. That based upon the willfulness of the Defendants in refusing to comply with the law, and the willfulness of the Defendants in violating the law, that this Honorable Court retain original jurisdiction over this matter to review all future endeavors by the town of Needham and its elected officers with regards to the Plaintiff;

7. That the Town of Needham and the Individual Defendant be required to pay the reasonable attorney's fees and costs to the Plaintiff consistent with this claim to redress constitutional deprivations, as well as damages in the amount of $10,000,000; and

8. any further relief deemed appropriate by this Court.

Respectfully Submitted,
**The Plaintiff**
By its attorneys,

Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Richard C. Csaplar, Jr, BBO #107720
41 Dawson Drive
Needham, MA 02492
Phone (781) 444-6619

Dated: February 17, 2005

24

Page 20   THE NEEDHAM TIMES        Thursday, May 6, 2004

# Chabad to celebrate Lag B'omer at Hale Reservation Sunday

A barbecue and family celebration is planned in honor of the Jewish holiday Lag B'omer Sunday, May 9, 4:30 p.m., at the Powissett Lodge at Hale Reservation in Westwood.

The event will feature a kosher barbecue with all the trimmings, music and a traditional medurah or bonfire. This outdoor event is a project of the Chabad Jewish Center. In honor of Mother's Day, all mothers will be treated to free burgers and franks at the barbecue.

Lag B'omer commemorates the lives of two sages: Rabbi Shimon Bar Yochai and Rabbi Akiva. They both set examples of perseverance and dedication to the Torah and its teachings during the Roman occupation of Israel. It is a day of unity when family and friends join in harmony with acquaintances as well as strangers in accordance to the teachings of Akiva that all people should respect each other. It is a joyous holiday following the instructions of Yochai to celebrate his death.

The Chabad Jewish Center is a branch of the Chabad-Lubavitch movement, an international Chassidic organization under the leadership of the Lubavitcher Rebbe, Rabbi Menachem M. Schneerson of righteous memory. For more information or to register, call Rabbi Mendel Krinsky at 781-455-9096 or visit chabad@gis.net.

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Chabad-Lubavitch Jewish Center of Needham, inc

**DEFENDANTS** Town of Needham and Daniel Walsh

**(b)** County of Residence of First Listed Plaintiff Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Norfolk
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) Robert N Meltzer PO Box 1459 Framingham MA 01701

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☑ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
First and Fourteenth Amendment

Brief description of cause:
Unlawful order to cease religious activity

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 10,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 2/17/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)** *Chabad-Lubavitch v Town of Needham*

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

       I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ✓    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

       III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

       IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

       V.    150, 152, 153.

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.**

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**
       YES    (NO)

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?    (SEE 28 USC §2403)**
       YES    (NO)

   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**
       YES    (NO)

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?**
       YES    (NO)

7. **DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).**
       (YES)    NO

   A.    **IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?**

       **EASTERN DIVISION**    **CENTRAL DIVISION**    **WESTERN DIVISION**

   B.    **IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?**

       **EASTERN DIVISION**    **CENTRAL DIVISION**    **WESTERN DIVISION**

**(PLEASE TYPE OR PRINT)**
ATTORNEY'S NAME _Robert A. Meltzer_
ADDRESS _PO Box 149, Framingham MA 01701_
TELEPHONE NO. _508 872-7116_

(Cover sheet local.wpd - 11/27/00)