*[Handwritten margin notes, left side:] The Court understands that an emergency hearing [illegible] 2/17/05 [illegible]*

*[Handwritten margin notes, bottom left:] Denied without prejudice to [illegible] representations [illegible] that TRO motion appear has been given to the [illegible] party. Previous notice has been given.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

*[Filing stamp:]* FILED CLERKS OFFICE
2005 FEB 17 P 2:06
U.S. DISTRICT COURT
DISTRICT OF MASS.

*[Case number stamp:]* 05-10322-NG

| | |
|---|---|
| CHABAD-LUBAVITCH JEWISH CENTER OF NEEDHAM, INC. ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION NO:____ |
| ) | |
| THE TOWN OF NEEDHAM and ) | |
| DANIEL WALSH, Individually ) | |
| ) | |
| Defendants ) | |

MOTION OF THE PLAINTIFF, CHABAD-LUBAVITCH JEWISH CENTER OF NEEDHAM, INC. FOR A TEMPORARY RESTRAINING ORDER, EX PARTE, PURSUANT TO F.R. CIV. P. 65(b) PENDING A HEARING ON A MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO F.R. C. P. 65(a), AND MOTION OF THE PLAINTIFF, CHABAD LUBAVITCH CENTER OF NEEDHAM, INC. FOR A PRELIMINARY INJUNCTION PURSUANT TO F.R.C. P. 65(a) ON SHORT ORDER NOTICE

Now comes the Plaintiff, the Chabad Lubavitch Center of Needham, Inc. ("the Plaintiff") and moves this Honorable Court for a temporary restraining order pursuant to F.R.C.P. 65(b), ex parte, and for preliminary injunction following notice pursuant to F.R. C.P. 65(a). The Plaintiff is requesting that this Court issue temporary relief enjoining the enforcement of a January 20, 2005 "Order" that has the consequence of denying the Plaintiff not only its protected constitutional rights, but also the rights of the Plaintiff to conduct is business without further interference so that it may meet its financial obligations.

As grounds for this Motion, the Plaintiff states that this is a lawsuit seeking remedies for deprivations of constitutional free speech rights, free assembly rights and free exercise of religion rights guaranteed to the Plaintiff pursuant to the First and Fourteenth Amendments of the United States Constitution.

The Plaintiff is seeking only to be left alone from governmental interference in the lawful use of its parsonage in the town of Needham. Denial of this right is not only constitutionally impermissible, but also contrary to the building codes and zoning by-laws of the Town of Needham.

Because the Order threatens irreparable harm, a preliminary injunction must issue to protect the rights of the Plaintiff while this matter is adjudicated. Because the vague Order may take "effect" prior to the hearing on preliminary injunction, a temporary restraining order should issue pending the motion for preliminary injunction being heard.

As grounds for this motion, the Plaintiff states as follows:

I.   NATURE AND STATUS OF PROCEEDINGS

The Plaintiff filed this suit on February 17, 2005 seeking a declaration that the town of Needham and its agent, Daniel Walsh, did violate and continue to attempt to violate the Plaintiff's constitutionally protected rights to free exercise of religion, free assembly and free speech rights under the First and Fourteenth Amendments of the United States Constitution, and related statutes. The Plaintiff now seeks a temporary restraining order to preclude further violation pending the outcome of this matter at trial.

II.  FACTS

The Plaintiff is a synagogue in Needham, Norfolk County and services the greater Needham area. The Plaintiff's business consists of providing outreach and services to the Jewish community, as well as providing education about Jewish beliefs, traditions and cultural practices

to the general population in order to foster understanding of these beliefs, traditions and cultural practices. As the Plaintiff states in great detail, the Plaintiff owns a parsonage at 472 High Rock Street in Needham.

The parsonage is the home of Rabbi Mendel Krinsky, his wife and his four children. Consistent with the property's accepted use as a parsonage, the Rabbi holds small worship services (of about ten men) in his home, as well small learning sessions. He also maintains his office in the parsonage. For large events, the Plaintiff rents hall space elsewhere in Needham.

As is also noted in the Complaint, on January 20, 2005, following a long period of dispute with the town of Needham, the town of Needham, by Dan Walsh, issued an ordered that Plaintiff cease "the use of the property at 472 High Rock Street, Needham, MA as a worship center… until proper permits and or relief has been granted by the appropriate boards."

The town is apparently basing its order on the notion that the "use" of the property has changed from residential use, an assertion that is contrary to all the facts in this matter. In fact, Mr. Walsh specifically states that this order is "based upon the information I have been provided from the High Rock Street neighborhood," not upon personal knowledge. A copy of the Order is attached hereto.

The Plaintiff's use of its property is entirely consistent with town building codes, zoning by-laws and so forth, and is not, as an absolute matter of, required to have its religious practices submitted to ten town boards.

Based upon conduct of neighbors, it has become evident that the town is not interested in attempting lawful regulation, but is, instead, engaged in a knowing and intentional violation of the Plaintiff's rights under the United States Constitution.

3

The January 20, 2005 Order is not only contrary to law, but impermissibly overbroad and vague. The town is clearly attempting to limit the Plaintiff's rights to free exercise of religion and speech, as well as free assembly. The town has also issued Order that cannot be enforced without excessive interference with the Plaintiff and its guests, raising the ugly specter that the town intends to engage in some form in inquisition to ensure that no one is praying in the parsonage. As is noted in the Complaint, a Jewish home (and the parsonage is a Jewish home), is a worship center. Thus, the town of Needham, without legal cause, is ordering the Plaintiff's Rabbi not to pray.

Finally, as noted in the Affidavit of Mendel Krinsky, the Order is attempting to shut down a lawful business without cause. In addition to causing burdens on constitutional rights, the Order is also precluding the Rabbi from earning his living, and paying his bills.

### III.  ARGUMENT

#### A. THE PLAINTIFF IS ENTITLED TO BOTH A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

In order to grant a temporary restraining order and, after notice a preliminary injunction, a Court must find "that the plaintiff will suffer irreparable injury if the injunction is not granted; …that such injury outweighs any harm which granting injunctive relief would inflict on the defendant;…that plaintiff has exhibited a likelihood of success on the merits; and…that the public interest will not be adversely affected by the granting of the injunction." Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d. 1006, 1008-09 (1st. Cir. 1981).

As is further discussed below, the Plaintiff has a certainty of success on the merits. There is no evidence that the Plaintiff has acted contrary to any by-law, code or ordinance. Thus, the

intervention in the Plaintiff's lawful activities is completely baseless. Since no laws are being violated, there is no public interest, let alone a compelling interest, to infringe on constitutional rights. Finally, the Affidavit of Mendel Krinsky makes it clear that the harm to the Plaintiff, and its Rabbi, would be extreme if the Order were allowed to take effect.

Because it is not clear when the Order would take effect due to its vague wording, it is imperative that the restraining order be granted until a hearing may be held on the request for preliminary injunction.

### B. THE PLAINTIFF CAN DEMONSTRATE CERTAINY OF SUCCESS ON THE MERITS

The Plaintiff bought 472 High Rock Street as a home for its rabbi. Rabbi Krinsky lives in the home with his wife and four children. The house is zoned as a residential use, and it is being used as a residential property. Consistent with the law, the Plaintiff is permitted to have small worship services and study sessions in its parsonage, as a matter of law. The Plaintiff is acting fully within its legal rights.

Thus, there is no basis for imposing any restrictions on the Plaintiff, and the Order is void.

The January 20, 2005 Order specifically bars religious activity, by its very words. Because the town of Needham is specifically barring free speech and free exercise of religion based upon the use of the home by a religious family, it is a blatant violation of the First Amendment.

The mere fact that the content is religious content does not provide a compelling interest for restricting free speech. See, Widmar v. Vincent, 454 US 263 (1981) and Board of Westside Community Schools v. Mergens, 496 US 226, 110 S.Ct. 2356 (1990).

This is not a case in which the town of Needham has passed a by-law or ordinance aimed at religious liberty. This is a case in which the town of Needham is misapplying existing laws specifically so as to burden a religious organization outside the law.

The town of Needham can produce no evidence of violations. Indeed, the town appears to relying on vicious gossip from neighbors who seem to view a rabbi as a threat to their neighborhood, gossip which should not and cannot serve as a compelling reason to so blatantly infringe on the rights of the Plaintiff. The Plaintiff has found no case law that authorizes the town of Needham to delegate its powers to neighbors, and then to rely upon hearsay as a basis for constitutional deprivation.

In addition, the Plaintiff is facing an unenforceable order, flawed by its over breadth and vagueness.

Whereas the Defendants could make no legal showing that would grant them the authority to so violate the law, the preliminary injunction is necessary, the temporary restraining order imperative, and this motion should be ALLOWED.

C. THE PLAINTIFF HAS DEMONSTRATED IRREPARABLE HARM AS A MATTER OF LAW

As a threshold matter, any violation of a constitutional right constitutes irreparable harm. (Deprivation of First Amendment free speech expression for even a minimal time is sufficient to constitute irreparable harm. Elrod v. Burns, 427 US 347,373(1976).) Here, the Defendants are ordering the Plaintiff not to speak, not to gather guests in its parsonage and not to worship, all of which are grotesque violations of First Amendment rights.

Further, as the Affidavit of Mendel Krinsky notes, the Defendants are putting the Plaintiff out of business, and is jeopardizing the Plaintiff's Director's ability to pay for basic necessities, such as food, clothing and shelter. The Plaintiff cannot exist without fundraising, yet the Defendants are ordering the Plaintiff not to raise funds.

In the face of clear law on this subject by the Supreme Court as to the rights of the Plaintiff, this Court should not allow the Defendants to defeat those rights. Because the conduct is patently unconstitutional as a matter of law, and because the conduct threatens total loss of protected rights, the temporary restraining order should be entered now, and the motion for a restraining order, and injunctive relief after hearing, should be ALLOWED.

### D. THE DEFENDANTS CAN DEMONSTRATE NO HARM AS A MATTER OF LAW IF THIS RESTRAINING ORDER, AND PRELIMINARY INJUNCTION, IS ALLOWED

There can be no harm to the Defendants if they are compelled to follow their own by-laws and codes. Even so, the Defendants could state no harm that would warrant the extreme positions the have taken. There is simply no harm that would be suffered by these Defendants.

When weighed against the Elrod holding that determines that deprivation of free speech is irreparable harm as a matter of law, the Defendants will suffer no harm whatsoever if this motion is allowed. For that reason, this motion should be ALLOWED.

### IV.   CONCLUSION

The Defendants are threatening severe sanction unless the Plaintiff cease and desist from lawful, constitutionally protected activity. The Defendants have no basis whatsoever for this conduct. However, the conduct threatens immediate and irreparable harm to the Plaintiff without cause. The Court must not let this conduct stand. For those reasons, the Plaintiff respectfully

requests an immediate temporary restraining order to enjoin the January 20, 2005 Order pending a preliminary injunction hearing, and requests that this Court, following a hearing, enjoin the January 20, 2005 Order pending a trial in this matter so as to avoid irreparable harm.

Respectfully Submitted,
**The Plaintiff**

By its attorneys,

_____
Robert N. Meltzer, BBO #564745
P.O. Box 1459
Framingham, MA 01701
Phone: (508) 872-7116


_____
Richard C. Csaplar, Jr, BBO #107720
41 Dawson Drive
Needham, MA 02492
Phone (781) 444-6619

Dated: February 17, 2005



# Town of Needham
# Building Department
## 470 Dedham Ave.
## Needham, MA 02492

Tel 781-455-7542

January 20, 2005

Richard C. Csaplar, Jr.
41 Dawson Drive
Needham, MA 02492

The Person In Charge
C/O Rabbi Mendel Krinsky
Chabad Lubavitch Jewish Center of Needham
472 High Rock Street
Needham, MA 02492

Re: 472 High Rock Street, Needham, MA,
    Chabad Lubavitch Jewish Center of Needham

Dear Mr. Csaplar and Rabbi Krinski:

Thank you for your December 22, 2004 letter reaffirming that the property under the religious corporation name of Chabad Lubavitch Jewish Center of Needham Inc. conducts its business at 472 High Rock Street and that Rabbi Krinski and his family also reside at the same location. I have reviewed the letter and I respectfully disagree with your interpretation of the Massachusetts Building Code and the Needham Zoning By-Law in this matter.

As you may recall, town officials had meetings last spring and over the summer with Attorney Csaplar, Rabbi Krinski, Dan Matthews, member of the Board of Selectmen, Kate Fitzpatrick, Town Administrator and me about the worship center occupying the property in question. This was done to help and direct Rabbi Krinski that if he desires to have a worship center occupy the property in question, certain improvements to the structure and the property may be needed due to building code regulations and local zoning. During the meetings, town officials communicated that the number of congregants and the amount of area within the existing house devoted to a worship center would be critical in determining what regulations apply. I suggested that Rabbi Krinski contract with an Architect to perform a code analysis based on the worship center occupying a portion of the existing dwelling. This would provide the town with a plan that clears up many unknowns, such as numbers of people occupying the structure, and the ability of occupants to exit the structure in the event of an untimely departure. You indicated at the

1

last meeting, November 3, 2004, that Rabbi Krinski would not commit to the number of visitors to the worship center.

With respect to a place of assembly being considered accessory/incidental to a single family use in the R4 use group, the Massachusetts State Building Code provides specific occupancy areas which are accessory/incidental to a main use group in table 302.1.1. Although the building code says that specific areas within and serving a dwelling unit are not required to provide separation protection through fire rated assemblies or fire protection systems, the code does not suggest that an assembly use is an accessory/incidental use to a single family use. Moreover, the assembly use does not complete (serve) a residence. Therefore, I believe you would have a mixed use building. Two uses separate that function independent of each other. That is to say, one use does not rely on the other use in order for the property to function as a residential dwelling or as a place of assembly. The dwelling is the use known to be the historic use of the property. However, the code is a large document such that a code analysis should be performed by a licensed registered professional. For the safety of the occupants, a code analysis needs to be performed prior to exposing any people to the two uses within the same structure.

Based on the information I have been provided from the High Rock Street neighborhood (see my letter dated 12/1/2004) I believe that the property is being used for a worship center and also, that the use of the property has changed. Because you have not provided a code analysis or information that allows me to conclude that the property is being used in compliance with all applicable codes and by-laws, I order the use of the property at 472 High Rock Street, Needham, MA as a worship center to cease until proper permits and or relief has been granted by the appropriate boards.

If you are of the opinion that my order that the use of the property at 472 High Rock Street, Needham, MA as a worship center to cease or that any or all of the Zoning By-Law as well as the Building Code provided to you in my 12/1/2004 letter, does not apply to your situation, you may appeal and or request relief for any Building Code issues to the Commonwealth of Massachusetts State Building Code Board of Appeals in accordance with section 122 of the Massachusetts State Building Code, 780 CMR, within 45 days after service of this notice. You may appeal or request relief for any zoning issues to the Town of Needham Zoning Board of Appeals in accordance with section 7.5.1 of the Town of Needham Zoning By-Law within 30 days after this decision in accordance with Massachusetts General Law Chapter 40A Section 13.

Sincerely,

Daniel P. Walsh
Inspector of Buildings


cc: Town Administrator
Town Counsel

2